UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

CONSUELO GARCIA RIVERA,

            Defendant.

------------------------------------X

08 Cr. 1008-03 (RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-1-11

**Sweet, D.J.**

       On December 9, 2010, Consuelo Garcia Rivera, a/k/a "La Mona," ("Garcia Rivera" or "Defendant") pleaded guilty to one count of conspiracy to import heroine into the United States, in violation of 21 U.S.C. §§ 960(b)(1)(A) & 963.  For the reasons set forth below, Garcia Rivera will be sentenced to 24 months' imprisonment to be followed by 3 years' supervised release. Garcia Rivera will forfeit to the United States all property involved in the offense or traceable to it.  Garcia Rivera will also be required to pay a special assessment of $100.

**Prior Proceedings**

       On June 2, 2010, Indictment 08 CR 1008-03 (RWS) was

1

filed in the Southern District of New York.   Count 1 charges that from May 2007 through August 2007, in the Southern District of New York and elsewhere, Garcia Rivera and others known and unknown, conspired to import into the United States or into waters within a distance of 12 miles of the coast of the U.S. one kilogram and more of heroine, in violation of 21 U.S.C. §§ 812, 952(a), 960 (a)(1), & 960(b)(1)(A).   Count 2 charges that from May 2007 through August 2007, in the Southern District of New York and elsewhere, Garcia Rivera and others known and unknown, conspired to distribute and possess with intent to distribute one kilogram and more of heroine, in violation of 21 U.S.C. §§ 812, 841(a)(10), & 841(b)(1)(A).

On December 9, 2010, Garcia Rivera appeared before the Honorable Michael H. Dolinger in the Southern District of New York and pleaded guilty to Count 1.

On March 4, 2011, the Court received a letter from Garcia Rivera's counsel requesting that Court be lenient when imposing a sentence in light of Garcia Rivera's role in the conspiracy, her extreme poverty, and the small sum, roughly $150, that she received from her criminal actions.   The letter further requested leniency due to Garcia Rivera's family history

2

and economic circumstances, and because she is unlikely to commit a similar crime again.

On March 4, 2011, the Court received a letter from Garcia Rivera conveying her regret.  On the same day, the Court received a letter from Defendant's two sons expressing their mother's value to their home.

Rivera Garcia's sentencing is currently scheduled for April 5, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines.  Thus, the sentence to be imposed here is the result of a consideration of:

  (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2)  the need for the sentence imposed —

3

     (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

     (B)   to afford adequate deterrence to criminal conduct;

     (C)   to protect the public from further crimes of the defendant; and

     (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for —

     (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5)   any pertinent policy statement . . . [issued by the Sentencing Commission];

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Garcia Rivera's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

Investigation by the Federal Bureau of Investigation ("FBI") revealed that the criminal conspiracy at issue involved the shipment of heroine, via human couriers, from Columbia to the New York City area. Couriers would transport suitcases containing secreted heroine from Colombia to the United States by way of commercial airliners. Garcia Rivera's role consisted primarily of watching over the couriers while they waited at her house for the suitcase of drugs to arrive. Garcia Rivera would cook for the couriers and escort them to the airport, and she would on occasionally watch the couriers to ensure that they got

on the plane without incident and then report back to other members of the conspiracy that the courier had left.

On May 13, 2009, Garcia Rivera was arrested by members of the Colombian National Police, pursuant to a provisional arrest warrant issued by the Southern District of New York, and was transported to the Direccion De Investigacion Criminal Dijin (Directorate of Criminal Investigation) in Bogota, Colombia. Prior to beginning the interview, Garcia Rivera was advised of the identity of the interviewing agents and the nature of the charges.  She was additionally provided her Miranda warnings, which she waived.  Also present during the interview was a special agent with the Drug Enforcement Administration, Bogota, Colombia.

At that interview, Garcia Rivera advised that she had a friend named Anita [Last Name Unknown] who introduced Garcia Rivera to Anita's boyfriend, Hernan [Last Name Unknown].  Garcia Rivera advised that Hernan had a male friend who was traveling to New York who needed a place to stay while in Colombia. Hernan subsequently paid Garcia Rivera 100,000 pesos, or approximately $50, for the male to stay at her residence. Garcia Rivera indicated that the male's name may have been

6

Steven and that he was of Colombian descent. Garcia Rivera further indicated that Steven stayed overnight at her residence.

The following morning, Hernan called Garcia Rivera to ask if Steven had been picked up from her residence. Garcia Rivera advised Hernan that Steven was still at her residence. As a result, Hernan sent Andres Avila Padilla to pick Steven up and drive him to El Dorado International Airport.

After Padilla picked up Steven, Garcia Rivera noticed that Steven had forgotten his cellular phone at her residence. Garcia Rivera indicated that Hernan directed Padilla to return and pick up Garcia Rivera and the cellular telephone from her residence, which Padilla proceeded to do. Once at the airport, Garcia Rivera indicated that she was detained and identified by personnel from the Colombian National Police, and that Steven had been arrested and was in custody.

Garcia Rivera advised that she was told by personnel from the Colombian National Police that Steven had been arrested for transporting drugs. She denied knowing that there were drugs contained within the bag that Steven was transporting.

7

Garcia Rivera indicated that prior to Steven staying at her residence, Jose Luis (Henry Parra Cifuentes) had an uncle stay with her.   Garcia Rivera further indicated that the individual was picked up and that she also traveled to the airport on this occasion.   Garcia Rivera did not recall who picked up this individual.   Garcia Rivera advised that on one other occasion, a homosexual male, whose name she did not recall, was brought to her residence, along with a bag by Hernan.   Garcia Rivera further advised that the unknown male was picked up at her residence and transported to the airport with a bag, and that she also traveled to the airport.   Once at the airport, Garcia Rivera indicated that she entered the terminal to observe the unknown male check in and depart.   When questioned as to her purpose, in traveling to the airport, Garcia Rivera answered that she was simply accompanying the unknown male to the airport because she had become friendly with him and was taking a ride.

**The Relevant Statutory Provisions**

Pursuant to 21 U.S.C. 960(b)(1), the statutory mandatory minimum term of imprisonment is 10 years and the maximum term is life imprisonment.   If a sentence of

8

imprisonment is imposed, a term of at least 5 years supervised release is required, pursuant to 21 U.S.C. § 960(b)(1)(A).

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C § 3561(a)(2) and 21 U.S.C. § 960(b)(1)(A).

The maximum fine that may be imposed is $4,000,000, pursuant to 21 U.S.C. § 960(b)(1)(A).

Pursuant to 18 U.S.C. § 1963(a)(1), (a)(2), and (a)(3), defendant must forfeit to the United States all property real and personal, involved in the offence or traceable to such property.

A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2010 edition of the United States Sentencing Commission Guidelines Manual has been used in this

9

case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

The guideline for the violation of 21 U.S.C. § 963 is found in § 2D1.1. The base offense level is 36, pursuant to § 2D1.1(c)(2).

Pursuant to § 2D1.1(b)(16), a decrease of 2 levels is warranted because defendant meets the criteria set forth in subdivisions (1)-(5) of § 5C1.2.

Based on her plea allocution, Defendant has shown recognition of her responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels. Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 31.

10

The Defendant has no known criminal convictions.  This warrants zero criminal history points.  A total of zero criminal history points establishes a Criminal History Category of I, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 31 and a Criminal History Category of I, the Guidelines range for imprisonment is 108 to 135 months.

The Guidelines range for a term of supervised release is five years, the statutory minimum, pursuant to § 5D1.1. Because the Defendant qualifies under § 5C1.2, pursuant to note 2 of § 5D1.1, she is not subject to any statutory minimum sentence of supervised release.  The guideline range for supervise release is therefore three to five years, pursuant to § 5D1.2(a)(1).

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offense is $15,000 to

11

$4 million, pursuant to § 5E1.2(c)(3)(A) and (c)(4).  Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7).  The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,270.93 to be used for imprisonment, a monthly cost of $317.32 for supervision, and a monthly cost of $2,063.19 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.  In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is

determined that a downward departure from the Guidelines sentence is warranted in the instant case.

Under 18 U.S.C. § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant." As described in the PSR, Defendant's role in the conspiracy was to provide a bed and meals for drug couriers. She earned, for her criminal actions, approximately $150. According to the PSR, Defendant's economic circumstances are severe, and she has never held a stable job. Defendant's parents died when she was 18, and she was physically abused by her father and the fathers of her two sons. Defendant's economic conditions prevented her from sending her sons to school, and on occasion the Defendant did not have money for food. According to the PSR, Defendant became involved in the instant offense while looking for work. It appears that these factors led Garcia Rivera to criminal activity.

The Court notes that, in this case, Garcia Rivera has accepted responsibility for her conduct. In light of the nature and circumstances of the offense as well as Defendant's personal difficulties, the Court finds that a downward departure from the Guideline sentence is appropriate to impose a sentence

"sufficient, but not greater than necessary" under 18 U.S.C. § 3553(a).

**The Sentence**

For the instant offense, Garcia Rivera will be sentenced to 24 months' imprisonment and 3 years' supervised release.

Garcia Rivera is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence her term of supervised release. It is recommended that Garcia Rivera be supervised by the district of her residence.

As mandatory conditions of her supervised release, Garcia Rivera shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

14

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1)   Defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether Defendant has reverted to using drugs or alcohol.  The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the probation officer. Defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

(2)   Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

(3) Defendant shall submit her person, residence, place of business, vehicle, or any other premises under her control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of

15

the conditions of the release may be found.  The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

        In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

        Pursuant to 18 U.S.C. § 1963(a)(1), (a)(2), & (a)(3), Defendant shall forfeit to the United States all property, real and personal, involved in the offense or traceable to such property.  A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

        The terms of this sentence are subject to modification at the sentencing hearing scheduled for April 5, 2011.

        It is so ordered.

New York, NY
April  /  , 2010                          ROBERT W. SWEET
                                              U.S.D.J.

16